On behalf of the Avalanche, Ms. Megan Ledbetter. On behalf of the Avalanche, Mr. Jake Paul Hoffman. Good morning, counsel. Ms. Ledbetter. Good morning, your honors. Good morning, counsel. I'm Megan Ledbetter with the Office of the State Appellate Defender on behalf of the defendant appellant, Christopher Sumner. May it please the court. I've reached five issues in this case, and I'd be happy to take questions on any of them. But I intend to argue issues one, two, and four. Issue one being the right to choice of counsel issue. Issue two being that the state did not prove the class three felony version of this offense because it did not prove that Sumner was ineligible to possess a FOID card. And issue four being the second amendment challenge to a portion of the FOID card act. I'll begin with issue two. Sumner was convicted in this case and sentenced for a class three felony, possession of a firearm without a FOID card. That offense requires proof of two things. First, that Sumner possessed a firearm without a FOID card. And second, that he was not otherwise eligible to obtain a FOID card. Because the state did not prove that Sumner was ineligible to obtain a FOID card, his conviction must be reduced to a class A misdemeanor. The fact is Sumner was eligible to obtain a FOID card. Section 2A of the FOID card act lays out 13 criteria that all applicants for a FOID card must meet. Section 2A.1 lays out three additional criteria that persons under 21 must meet. They must have the consent of a parent or guardian. They must not have been adjudicated delinquent or convicted of a misdemeanor other than a traffic offense. And they must have an affidavit from the consenting parent saying that he or she is not himself or herself ineligible to possess a FOID card. At trial, the state did not present evidence that Sumner could not meet any of these criteria or all of these criteria on April 3rd, 2008. In fact, actually, the parties proceeded the entire time as if they had forgotten that the state was required to prove that Sumner was ineligible in order to prove the class three felony. So how was defendant prejudiced in preparation of his defense, though? Well, the number one reason that he was prejudiced is because the state literally did not prove it. So he was prejudiced because he got convicted of a class three felony that he did not, in fact, commit. But if you're referring to argument three. The lack of being in the indictment. Yes, the lack of notice was relevant here. I mean, the reason that he was prejudiced was precisely because the parties proceeded the entire time that they were unaware of the state's burden to prove this. They didn't present any evidence. They didn't even argue it. The defense counsel, therefore, didn't defend against it. I believe that the record supports that he was, in point of fact, unaware that he had to prove that Sumner. I'm sorry, that the state had to prove that Sumner was ineligible. And, in fact, the court made absolutely no mention of Sumner's eligibility when he was ruling on the case. He basically said because, you know, Sumner constructively possessed this handgun, that he was guilty of the class three felony. But now didn't the grand jury transcript have the correct information or the requisite information in there? Well, the transcript of the grand jury was certainly not part of the charging instrument. There's a requirement in Illinois, obviously, that the specific factual allegations be included in the charging instrument. This charging instrument said parenthetically that he was being charged with a class three felony. But it didn't allege that he was ineligible. And it certainly didn't allege any specific grounds on which he was ineligible to have a firearm. And, in fact, that does bring me to the point that the state post-trial for the first time was arguing that he was ineligible because he wasn't 21. And that, in fact, is the reason that the court accepted. And that is just clearly incorrect, aside from the fact that it's inconsistent with Section 2A.1, which provides a method for a person under 21 to get a Floyd card. It's also inconsistent with the Second Amendment. The idea that somebody under 21 is just ineligible to have a Floyd card and to possess a gun is not consistent with the Second Amendment. And the state's argument, which has raised now for the first time on appeal, that Sumner was ineligible because he did not file an application saying that he was eligible is just a burden. It's shifting the burden of proof to us. Being eligible to possess a Floyd card is, of course, not the same as having a Floyd card or applying for a Floyd card. Just as being eligible to vote is not the same as registering to vote or voting. Because the state did not prove that Sumner was ineligible to possess a Floyd card, his conviction must be reduced to a Class A misdemeanor. So if the court has no further questions on that issue, I would proceed to Issue 1. With regard to the charging document, is your argument on that that the case should be reversed and remanded based upon that? Or what's your argument on the charging document? Have you watched the violation of 111.3.C.5? Absolutely. That's Argument 3. The relief under both Arguments 2 and 3 would be the same, a remand for a new trial. And the case of People v. Rowell, the Supreme Court case, is highly instructive in this area. It's very comparable to this case. The state didn't allege in that case that the defendant's several retail thefts were, quote, in furtherance of the same intention and design or something like that. And the court found that it was not properly charged and that he was prejudiced, basically, because the state did not accidentally prove something that it neither charged nor argued. And that's what happened here as well. The state did not accidentally prove something that it neither charged nor argued. And in that case, it was remanded for a new trial? Yes, it was. It wasn't reduced to a lesser offense? Oh, I'm sorry. I'm sorry. It was reduced to a lesser offense. I apologize. Yeah, it was remanded for resentencing in that case. In this case, resentencing would be unnecessary because, unfortunately, Sumner has already served the sentence for a Class 3 felony. So this would be a reduction. They reduced in that. I apologize, Your Honor. So a violation of 111.3.C.5, your argument is that that should then be reduced to a Class A misdemeanor, not remanded for a new trial? Yes, Your Honor. Yes, it is. So you're arguing that he wasn't put on notice of what was going on at the trial? Yes, because the main issue, and perhaps the only one that Your Honors need to reach, is the second issue that I've argued, that the state did not prove this offense. That's the reason that the conviction must be reduced to a Class A misdemeanor. Did they prove a Class A misdemeanor? I believe they did prove it. I believe that that should be reversed under Argument 4, because I believe that the statute requiring putting these burdens on a person between 18 and 21 to get a FOIA card is unconstitutional. But the state did meet its burden of proof with respect to the Class A misdemeanor. So if Your Honors have no further questions, I would move on to Argument 1. The United States Supreme Court has made very clear that the right of a non-indigent defendant to choose his attorney is the, quote, root meaning of the Sixth Amendment right to counsel in criminal trials. Sumner was a non-indigent defendant, and he had a right to choose his attorney. Although that right can be limited when the court conducts a proper inquiry and specifically finds that the defendant is attempting to thwart the administration of justice, the defendant's right to choose an attorney is otherwise absolute and must be respected. The court's denial of a continuance here, when Sumner requested a continuance to obtain new counsel, on the very day that Sumner was arraigned, just 17 days after he was indicted, was clearly an abuse of discretion. In fact, the court's failure to inquire was a complete abdication of judicial responsibility, which immediately deprived Sumner of the right to choose an attorney. He must have a new trial on the Class A misdemeanor, as we discussed. Didn't the trial court have an obligation to balance the defendant's desire for a new lawyer with the efficient administration of justice? We all know our trial courts are overloaded. When a case is ready for trial and there isn't a real good reason to continue it, I mean, the state answered ready. They said they just needed time to get one witness there, and the trial court was willing to grant that continuance. The state was ready to go. Wasn't the trial court appropriately balancing the efficient administration of justice in this case? No, Your Honor, the court was not. The court was required to balance the efficient administration of justice with the defendant's constitutional right. The reason that we know for a fact that it did not do that is because it did not ask one single solitary question that was pertinent to the analysis. It didn't inquire about any of the factors that it should have been paying attention to, not to mention it's also patently obvious from the record that Sumner had a very good reason to request a continuance. He had just been indicted, as I just said, he'd just been arraigned, and it was when he was arraigned that he found out for the first time from the judge's mouth that he was looking at, if convicted on the Class III felony, two years minimum in a penitentiary. And he, at that time, the defense counsel admitted that he had misadvised, that's a quote, he misadvised him, he told him his offense was probationable. The state's attorney echoed that concern and said that, in fact, the state had offered him probation. Then the parties even went back, had a 4-2 conference, and he was ready to plead guilty, and the state revoked its offer when he was literally in the process of accepting the offer. And then they took another recess, and he came back, and defense counsel said, Your Honor, my client would like a new attorney, and I'm sure that he did want a new attorney. And that's really what's key. He was not attempting to thwart the administration of justice. He wanted an attorney who perhaps would properly advise him about what type of penalty he was facing. And the court conducted no inquiry. That's really the key issue here. Among the questions that the court did not ask, that it should have asked, were things like, Why would you like a continuance? How long of a continuance would you like?  In fact, there were three recesses in the proceedings on the day that this occurred, and it is entirely plausible that he and his mother and father and grandmother, who were all on record as him having conversations with them, that they were trying to find him a new attorney, and the court didn't ask about any of that. Did the state, in fact, got a continuance for quite a period of time? That's exactly right, and that's another very relevant point, is that the state's attorney here actually very graciously agreed to a continuance, and not only a continuance, but a continuance so that Sumner could find a new attorney, actually. They said that specifically, and was not prepared to complete its trial. The court really knew all day. They were attempting to serve one of their key witnesses in the morning, and she had not been served, and they did not think she was coming, and she did not come, and they had to request a continuance. And how long was that continuance? Five weeks, a five-week continuance. If there were witnesses present, who did testify that day? I believe there were a couple of officers present, yeah. But generally, the defendant's constitutional right to choose an attorney should outweigh the inconvenience to all other parties, including the state, the witnesses, and the court, if the defendant is not attempting to thwart the effective administration of justice. And in this case, it's very similar to the Supreme Court case People v. Walker, where the trial court denied the continuance without conducting an inquiry. So because the trial court denied this continuance on the day of arraignment without inquiry, he deprives Sumner of the constitutional right to choose an attorney, and he's entitled to a new trial. So if there are no further questions, I would turn now to the Second Amendment issue. I believe the Second Amendment issue presented by this case is a question of first impression for this court. I know of no cases, and the state has cited none, addressing the constitutionality of a statute that regulates the core constitutional right of 18- to 20-year-old adults to keep handguns in the home for the purpose of self-defense. While there is nothing wrong with the state requiring a FOID card as a prerequisite for having a gun, the legislature must ensure that the process for obtaining a FOID card does not run afoul of the Second Amendment. Section 2A1, or I if it is, of the FOID card act violates the Second Amendment because it conditions the right of 18- to 20-year-old adults to own handguns, even when in the home, even for the purpose of self-defense, on their ability to obtain the consent of a qualified parent or guardian. Because this licensing scheme infringes on the core Second Amendment right of 18- to 20-year-olds, strict scrutiny is the appropriate standard of review. Even under intermediate scrutiny, however, the law does not pass constitutional muster. While the state must, may have, rather, an important interest or even a compelling interest in reducing handgun violence, it's clear that Section 4A21 is not substantially related, much less narrowly tailored, to reducing gun violence because it prohibits law-abiding adults from owning guns, even when kept in the home, even for the purpose of self-defense, based on parental veto power or imputed disqualification. The statute does not provide exceptions, notably, in even the most obvious circumstances, such as where an applicant is over 18 and has no living parents or lives alone or is the oldest member of his household and keeps the gun in self-defense. Christopher Sumner is, in fact, an excellent example of the class of persons injured by this law. He was a law-abiding adult with a job and a family. He lived with his girlfriend and his daughter in a home. The Second Amendment... Do you have any cases that 18- to 20-year-olds that have found that that is unconstitutional under the Second Amendment to restrict gun ownership to, in some fashion, to people who are 21 and older? No, Your Honor. I don't know of any. And that's why I believe that this is... As far as I know, this is a matter of first impression for this Court. There are cases that have analyzed statutes abridging the right of persons under 18 to own guns, but none that I know of in this group where it's between 18 and 21, where the person is legally an adult. I know of no cases that have even analyzed that, pro or con. Do the cases cited by the State on page 31 of their brief have to deal with people under 18? They have to do with a variety of things. The State v. Size and the Enri Renee are both juvenile cases. The word juveniles used, both defendants were 17. And not only that, but in both of those cases, the laws applied to persons under 18, and they contained exceptions for people who were in the home for self-defense. So those laws only applied to juveniles and contained exceptions. This law applies to adults and contains no exceptions. The other cases cited by the State deal... All of the defendants, if I may. Go ahead and finish my next sentence. All of the defendants in those cases were either felons or misdemeanants or the gun was outside the home or there was some other issue at play. But the Sumner's conviction for violating the Foyd Card Act must be reversed. So if there are no further questions at this time, I would ask the Court to reverse Sumner's conviction outright pursuant to the Second Amendment issue or else to reduce his conviction to a Class A misdemeanor under Arguments 2 and 3 and remand his case for a new trial. Thank you. You'll have time on rebuttal. Thank you. Mr. Hoffman? May it please the Court, Counsel? I am Jay Hoffman. I'm the Illinois Appellate Prosecutor's Office. And in this case, as always, it's my pleasure to represent the people of the State of Illinois before this Honorable Court. As with the Appellant's Counsel, I'd be happy to answer any questions regarding... Well, I guess the only issue that wasn't argued was the fifth issue. But, obviously, I'd be glad to answer any questions regarding any of the issues. I'll start, as my home did, with a combination of Issue 2 and Issue 3 that is the reasonable doubt and the notice. First of all, what Counsel asks here is that the State prove a negative. That is, that the State prove that at no time ever did her parents, did the defendant's parents, ever consent. That's not what is necessary. As I've set forth in my brief, the requirement is that in order to get an FOID card, the person must be 21 or, if under 21, submit an affidavit saying that he or she has the consent of the parent and that the parent qualifies to hold an FOID card. There was no such affidavit here. And we know that there was none because the people submitted evidence of the defendant, two weeks after, when he turned 21, tried to get an FOID card. And we submitted at trial the letter back from the person of the Illinois State Police saying, here's the submission by the defendant after he became 21, and we have no other documentation from him. Meaning that there was no affidavit, there was no previous application. Therefore, there was no qualified parental consent under the statute. So there's kind of a burden that shifts then? Basically, the state just proves someone's under 21, and then the burden would then be on the defendant to show that the parents consented or would be willing to consent or able to consent? Well, that would be different than the argument I just made, though, Your Honor. I believe that's true. It's like an affirmative defense. If he comes forward and says, hey, I had consent, then it would be for us to prove that he didn't at that time. But what I'm saying here is even if one says that it was our burden to prove this negative, which would be impossible, even if one said, well, not impossible, even if one says that it would be our burden to prove it, it was proven here in this specific circumstance because we had the statement, we had the records from the Illinois State Police saying this is his only application, which was sent after he was 21. Therefore, we know that there was no affidavit. At least it could be inferred beyond a reasonable doubt that there was no affidavit. I suppose he could then come forward and say, oh, well, I had this affidavit, and it was in the back of my file cabinet, and I got it from my parents, but I never used it. But even that, I would argue, would be insufficient because under the statute, in order to qualify, you have to submit this to the Illinois State Police. So even in light of the evidence that was presented, if this person's mother had come into trial and said, I would have consented. If she said, I would have consented, no, because she didn't, because you have to have this affidavit submitted in order to get the FOID card if you are under 21. And so what about the charging document? I mean, 111-3C5, you know, codified apprendi, and the state's supposed to put these things in the indictment in order to at least get noticed in some fashion during the indictment or before trial. Clearly, that didn't happen here. Well, it probably didn't happen. Any argument I could make, and I need an argument saying that perhaps the tendering of the grand jury transcript constitutes giving a writing, but that argument is really not before this Court because of the timing of the complaint. The first time any complaint was made here was in the post-trial motion, and we know that the timing in an indictment challenge is crucial. In order to sustain it here, of course, if you challenge the indictment before trial, it must be very specific. It must meet the qualifications strictly. If you challenge it after trial, or after trial begins, in fact, but here after trial, all that must be shown is that there is no prejudice in that the defendant was aware of against which he had to defend, and he could plead this conviction against any double jeopardy claim later on. How was this defendant aware of what he was to defend when it was not in the indictment, it was not stated in any other pleading, and nobody ever even talked about it at trial regarding it being an element? Well, at trial, well... And there were, what, how many days between the indictment and the trial? Well, I would suggest that's a red herring, Your Honor, because there was a complaint and a complaint slash information, and in the reply brief, the defendant takes me to task for using that nomenclature, the complaint slash information. But if you look at the, it's entitled Complaint for Preliminary Hearing, then sets out the charge, then it's signed by the state's attorney or an agent of the state's attorney, and below that, there's a notification by a notary saying the foregoing information is signed before me on this date. That's why I use that nomenclature, because it is a Kane County, I guess, idiosyncrasy, but they entitle it Complaint for Preliminary Hearing, and below they entitle it Information. But the point is that... But that's not the document that you rely on when you go to trial, if you subsequently indict, correct? Well, but he knew that that was, that's true, that the indictment, but it wasn't changed, and he knew that that was the charge. If it had been changed, if they had changed the charge, then there might be an argument saying, oh, well, he was prejudiced. But it wasn't, and his counsel had been negotiating for nearly six months regarding this, and they also say, well, you know, he went to trial only three days before or on that date. That's not true. A month of September 29th, counsel said, well, we've been trying very hard. We have not reached a negotiation, a plea deal. Therefore, we need to set it for trial. It was set for trial more than a month later, and so he had plenty of time. He had six months of knowing what the charge was, and he had that time before trial. Now, as far as what was in the charge, yes, the sentencing statute itself was not included in there. That language was not in there. But both the complaint and the indictment speak of it being a Class III felony, so that we're aware that it was heightened to a Class III felony from the Class A, And as Justice Leanoff indicated when counsel was up here, in the grand jury, the transcript of which was tendered, the officer who testified there said he was under 21 and he was not qualified. I'm not sure qualified is the right term, but he was not able to, he was not qualified to have an OID card. Yes, it would have been better if it had been totally set out. There's no doubt about that. But again, we have to remember where we are. The standard here is just the prejudice standard because it was attacked after trial. Well, again, nobody said anything about it at trial. I mean, it has to be pled and proven, right? Correct? Well, yes. How did he get around Apprendi? Well, it was proven. Apprendi, as far as you're speaking now, not as far as notification, because you know Apprendi doesn't go to notification, but the statute does. Was there testimony at trial that this was a Class III because he was under 21? Well, I believe there was that testimony when he was arraigned. He was called a Class III because he was under 21. The question is, was there specific testimony that because he was under 21, he did not qualify to have an FOID card? Were any testimony at trial with respect to this being enhanced to a Class III felony? Well, again, he was well aware that it was in Class III. You're saying on this specific grounds. Right. I don't know that there was, but there was evidence of it. What evidence? There was evidence from this letter from the Illinois State Police that he could not qualify for it. Yeah. And this is not a jury trial. This is not an instructions case. Yeah, but the evidence from the State Police was he didn't qualify because he had this charge pending. Well, yeah, and that's what time says. Well, it says, you know, he couldn't get it because this was pending. But it shows more than that because, and that's not what I'm relying upon. What I'm relying upon is the part of that exhibit, that notification from the Illinois State Police that there was no other, I'm not going to remember the exact words, but the point is that there was no previous, there were no other documentation on file for Mr. Sumner to get an FOID card, meaning that he had not submitted an affidavit. He did not qualify. So you're saying that he was sufficiently put on notice that it was this age issue as opposed to any of the myriad of exceptions to being eligible, you know, mentally retarded, addicted to narcotics, in a mental institution within the last five years. I mean, there's almost dozens of these things in the code other than 21 and not having your parents' approval. So he was sufficiently on notice that that was the one we were going for and not any of these other things. Well, because the requirement of the statute is that, and I understand their argument to be that, simply because he was under 21. And that's what it was. He was accused of not having an FOID card, and it was he was told, and the proof came out, that he was under 21. And so that's how we know it wasn't because he was mentally retarded or one of the other reasons. The whole trial revolved around his being under 21. And they argued that at the end? The state argued that at the end and said, we've proven guilty of the possession without the proof that there's no FOID card, and we prove he's under 21. Someone mentioned the under 21 at the trial. The trial judge, indeed, as I recall, found, I think it was at supplemental record 15, that it was proven under the facts and circumstances of this case that he was under 21 and therefore could not have an FOID card. On the motion to reconsider? Not a trial, on the motion to reconsider? Yes, on the motion to reconsider, but I believe also a trial, the fact that he was under 21 was mentioned. If nothing else, in this letter from the Illinois State Police, saying that he was under 21 and not qualified to have an FOID card. With regard to the next issue, the choice of counsel, it's true, again, that perhaps there could have been better questioning here. But as I set forth in the brief, I believe that the trial judge knew the crucial matters and asked the most crucial question. I've cited two cases from the United States Supreme Court indicating that the right to choice of counsel is not an absolute right. And the Sixth Amendment does not guarantee your choice of counsel. Rather, the Sixth Amendment is more concerned with having an effective advocate. Here, the judge asked the attorney if he was ready to go to trial, and the attorney said that he was. And the attorney had announced that he would be ready for trial a month earlier. Again, the United States Supreme Court in slapping has determined that simply because you are unhappy with your attorney doesn't mean that there was a violation of the right. It doesn't guarantee a firm relationship between the defendant and the state and the attorney. The question is, are you getting an effective advocate? But doesn't the court have to conduct a meaningful inquiry? The court could have and should have conducted a better inquiry here. But the court indicated, and indeed not at the time, but later at the motion for a new trial, said, well, it was my opinion that he was trying to delay matters. But the court jumped to conclusions with respect to that because there were no questions, correct? No questions asked. He did not specifically ask the defendant, why is it that you want your counsel? Right. However, I believe that it was clear from what had occurred. I think it's apparent that the defendant was unhappy that the negotiation had fallen through and was trying to avoid any jail time. I set forth in brief, and I don't have the cites with me now. Well, it wasn't just jail time. We're talking about penitentiary time. Several times he indicated, well, and I'm not going to get any jail time, right? And this is probation, right? And I'm not going to get any jail time, right? So he was very concerned with that. I believe that the trial judge had a right to infer that that's what his concern was, that he was trying. Wasn't it clear that his concern was that he was improperly advised by his attorney as well as the state's attorney were under the misapprehension that this was a probationable offense, correct? Well, he mentioned that at one point. He said something about, and just in passing. I think the attorneys mentioned it as well, did they not?  He said something about the advice was wrong or whatever. And the attorneys admitted that. And indeed, the state's attorney said, well, the previous ASA, I know, was negotiating for probation. And then they went off and tried to negotiate. And indeed, they came back. And this attorney said, the ASA has given a generous offer, and we're going to try to do this. And the ASA then, of course, withdrew it when there was some commotion in the crowd. Let me ask you this. Do you think that there is a difference if a defendant is going from private attorney to private attorney versus going from public defender to private attorney? For choice of counsel? For a continuance in choice of counsel. I mean, this is an individual that had hired private counsel, correct? Yes. So there is not an issue or there is less of an issue with the family has money to hire private counsel. Whereas you have a public defender client, and they're assumed they don't have any money because they have a public defender. So when they say, hey, give me a continuance, I'm going to get a new attorney, the chance of them probably getting the money together to get an attorney is probably less than a defendant who's going from private attorney to private attorney. Well, perhaps. But if they're saying they're going to get a private attorney, then I think the judge either has to take that word or inquire and ask why. Correct. And indeed, the judge did not inquire here, but I think from the record, you can see that there was no indication there was another attorney there. And Sir Roviano teaches that it is not an abuse of discretion to deny the continuance if there's not an attorney ready, willing, and able to take over the case. But in the Saviano case, that was a public defender client who never showed the court that they had talked to counsel, that they had money for counsel. They just said, I need a continuance, and the court felt that it was a delay tactic. Again, that's my issue. Don't you think it would have been beneficial for the court to inquire when you have a defendant who has private counsel who's asking for private counsel? It's a little different. Well, there's no doubt that it would have been better if a number of questions had been asked. And when a defendant asks for time to get an attorney, I don't even think the Saviano case is expecting that someone be ready, willing, and able standing right there next to them at that time. I don't believe that's what that case says. I think the cases that I have cited at the end of that issue, in addition to Saviano, indicate that at least there has to be some indication that there is counsel being inquired into. If not, that there is counsel who has been contacted. I think that's what the cases say. Is that per se evidence of a delay tactic? The trial court here on the motion to reconsider, maybe it was bootstrapping what happened earlier, I don't know. But I find that this individual was just doing this to delay the trial. What evidence is there, other than the fact that there was another attorney standing here, that shows that it was a delay tactic? Well, I think all of the factors under Childress and Burrell would apply here. Now, to say specifically that was a delay of arraignment and the date of trial, altogether, were that he's coming in and going to plead guilty to no jail time. And now the offer's revoked, and he has to go to trial with this individual who misadvised him. And he's got to go to trial looking at a mandatory minimum two-year penitentiary sentence. That's the situation here. It's not like Segoviano, where this is a little bit different factual situation. Well, it's not exactly the same as Segoviano, but I'm going to the factors that are listed in Childress and listed in Burrell. The fact that the attorney, albeit, and we don't know why it might have been because, well, whatever. There were discussions between this attorney and the previous ASA where they apparently didn't understand that it was mandatory. Correct. But there's no indication that he was not prepared for trial on the elements of the crime. He had been representing the defendant for six months. The defendant did not give any reason for wanting to get rid of him. He just said, well, you know, now you can infer, well, it's because that he wanted this deal, and now the deal fell through. But there's no indication that any other attorney would be any more prepared. But a right to counsel doesn't go to whether or not the attorney is prepared. It's the defendant's right to counsel. It became apparent on the trial date, did it not, that this defendant was not satisfied with counsel on the trial date. Oh, no. Counsel, the trial judge asked him. He said, do you have any problems with your counsel?  He said, no problems. At what point? It wasn't until after the deal fell through. Could one argue that he was satisfied with his counsel with respect to entering a plea on his behalf, but perhaps he was not satisfied with counsel to go to trial? But he wasn't asked just that. He was asked, you know, do you have any problems with counsel? He was asked if he was satisfied with his counsel in preparation to enter a plea of guilty. He was not specifically asked in preparation, et cetera, et cetera. But he gave no indication that he was unhappy with him in any way. And this was even, if I recall, this was even after the advice faux pas had been fronted and brought up. Thank you. Thank you, counsel. Ms. Ledbetter. Thank you. I do have a couple of points about both issues, or all three issues, I guess, that counsel addressed. First of all, I definitely believe that the state's argument with respect to the second issue is very clear burden shifting. The idea that they can't prove a negative is not true. They could have called Sumner's – they could have subpoenaed Sumner's parents and asked them on the stand if they had consented. In general, when a defendant is charged with a Class III felony version of this offense, the defendant does not have to prove that he was never in a mental institution, that he's not a convicted felon, that he is not a drug addict. He doesn't – it's not his burden to prove those things. It's the state's burden to prove that he's ineligible for whatever reason. The argument that States Exhibit 19 proves that Sumner was ineligible to obtain a FOID card, which actually also is an argument that has only been made in this appeal, the reasons that they're saying that States Exhibit 19 proves this, States Exhibit 19 proves nothing. It was an application for a FOID card that was filed three weeks after Sumner turned 21, and it said that Sumner was denied issuance of a FOID card three weeks after he turned 21 because of his arrest in this case. The notion that it circumstantially proved that the fact that he had never applied for a FOID card prior to that time circumstantially proved that his parents wouldn't have consented is a very tenuous inference. It's not an inference that actually makes any sense because there are lots of reasons why he might have waited until he was 21, including the reason that he had just been arrested for having a firearm without a FOID card. Maybe he thought it was a good time to get a FOID card. And also because maybe he didn't want to do the paperwork that was involved with filing earlier. But regardless, the idea that this proved that his parents wouldn't have consented is not true. And even if there were some very tenuous inference, it is not proof beyond a reasonable doubt. Let me ask you a question, something you said at the close of your argument. If we were to find that your client was prejudiced by a 111-3C5 violation, and or if we were to find that there was insufficient inquiry done by the trial court regarding right to counsel, you said that we should reverse and remand for a new trial on a Class A misdemeanor. Right. I mean, I understand the reverse and remand part. On what basis do you say, did jeopardy attach on the Class 3? On what basis do we tell the trial court this must be a Class A misdemeanor? Because once it goes back, I mean, there could be amended pleadings filed. Who knows what could happen. And I don't want to be, you know, I don't know that we're in a position to give advisory opinions to the trial courts on what they should do once we remand the case. Oh, no. Well, you would reduce this to a Class A misdemeanor because the state did not prove an element of the offense. And it would certainly be double jeopardy to retry him on a Class 3 felony. The state charged him with a Class 3 felony. Again, there were two components of that. One, that he didn't have a FOIA card, possess a gun without a FOIA card. Two, that he was ineligible. The state completely failed to prove that he was ineligible, and there's no undoing that. There's no giving them another bite at that apple. That would be a double jeopardy problem. So his conviction should be reduced to a Class A misdemeanor pursuant to these issues and should be remanded for a new trial under the choice of counsel issue, basically. Well, his conviction shouldn't be reversed. I'm sorry, reduced. His conviction shouldn't be amended. The charge should just go forward as a Class A. You said his conviction should be amended to a Class A misdemeanor before remaining for a new trial. He's not convicted anymore. Reversing as a Class A. Are you suggesting one of two alternatives, correct? Maybe you better clarify because I understood what you've told us differently than Justice Burke and Justice Shostak. So maybe you should clarify because I'm not sure the three of us are on the same page in terms of understanding what you're asking. Okay. I believe that pursuant to Supreme Court Rule 615B3, that the court should reduce the degree of the defendant's conviction. This is also what occurred in People v. Rowell, where it was also a Class 3 felony if the state proved that the defendant had committed these retail thefts in furtherance of the same intention and design. And if they didn't prove that element, it was a Class A misdemeanor. Well, the Supreme Court in that case reduced the degree of his conviction pursuant to 615B3 to a misdemeanor, and in that case they remanded for resentencing. In this case, it would be reduced to the Class A misdemeanor and remanded for a new trial on the choice of counsel issue. But he can't be retried on the Class 3 felony. I guess I didn't understand that the first time around. So you're saying reduce, remand for a new trial on the choice of counsel issue. Exactly. But then you're suggesting he can only be retried on the Class A misdemeanor. Certainly. Certainly he can't. I believe he could not legally be retried on the Class 3 felony because the state charged it. They had their chance to prove it. They failed to prove it. Under Rule 615B3 and pursuant to People v. Rowell, this court should reduce his conviction because this is what would be called, quote, an evidentiary weakness in the state's case. But how about if we don't determine that there was a problem with counsel? If you don't determine there was a problem with counsel, you would reduce the degree of the conviction. You would just, under 615B3, reduce it to a Class A misdemeanor. And do what? Well, I mean, there's the Fourth Amendment issue that I'm asking you to reverse that right now. Assuming that you don't agree with that and you don't agree with any of the other issues, nothing. You just reduce the degree of his conviction. There's no remanding for resentencing, as there was in Rowell, because he served a Class 3 felony sentence. So it would be just very simply to reduce that. With respect to choice of counsel, how do you respond to the state's argument that when asked, are you satisfied with your attorney, he said yes? Okay, this brings up a very good point because he did say that, as you were pointing out, actually. He said that right as he was going to plead guilty, and the thing was because the state's attorney said, oh, he's pressed interest off record in firing his attorney. I'm not sure if we can get a valid plea today. And the court obviously was in a hurry to get things done and said, are you satisfied with your attorney? And he said yes, basically, insofar as he was going to plead to this probationary deal. But obviously, when that fell through and that was revoked after being misadvised, he was not satisfied with his attorney. And he did make that clear. He said that he wanted a new attorney. And really, the main issue here is that this is not an effective assistance of counsel issue. This is a right to choice of counsel issue. The minimal questions, not even an inquiry, the questions that the court asked were questions, are you prepared for trial? A senator said no. Are you prepared to try this case this afternoon? No. Are you prepared, defense attorney? Yeah, but I'm concerned that my client wants to fire me. He was only concerned with whether or not he was going to get effective representation. But regardless, the Sixth Amendment also protects an independent right to choose an attorney. And that's what's been violated here. And on those grounds, we'd ask that he have a new trial. Thank you. Thank you, counsel. At this time, the court will take the matter under advisement.